**E-FILED**
Wednesday, 05 December, 2007  04:20:42 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHARON GILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3157 |
| | ) | |
| NORTH GREENE UNIT | ) | |
| SCHOOL DISTRICT NO. 3, and | ) | |
| VICKI VANTUYLE, Superintendent, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on cross motions for summary judgment (d/e 7 & 8).  Plaintiff Sharon Gill (Gill) was a teacher employed by Defendant North Greene Unit School District No. 3 (District).  Gill alleges that Defendants refused to pay her health insurance premiums while she was on unpaid leave because of her gender and her age, in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA).  29 U.S.C. § 621 <u>et</u> <u>seq.</u>; 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>  All parties ask for summary judgment.  Gill asks for oral argument on the cross-motions.  The parties have briefed the matter

sufficiently, so oral argument is not necessary.  Defendant Vicki VanTuyle
is entitled to summary judgment because Title VII and ADEA claims can
only be brought against the employer.  The District employed Gill, not
VanTuyle.  VanTuyle was the Superintendent of the District.  Otherwise,
issues of fact preclude summary judgment for either party.  Thus, Plaintiff's
Motion for Summary Judgment (d/e 8) is denied, and Defendants' Motion
for Summary Judgment (d/e 7) is allowed in part.

<u>STATEMENT OF FACTS</u>

Gill is a woman.  She was born on April 17, 1943.  In the 2003-04
school year, Gill worked as a teacher for the District.  She stopped working
on March 18, 2004, because she suffered from an adrenal insufficiency and
chronic fatigue syndrome.  She used up her sick days on April 6, 2004.
Thereafter, she was on unpaid leave for the rest of the school year.

Gill provided the District with a handwritten note from her doctor
dated May 19, 2004, which stated: "Anticipate return to work August
/2004."  <u>Plaintiff's Reply to Defendant's Response in Opposition to
Plaintiff's Motion for Summary Judgment (d/e 14) (Plaintiff's Reply)</u>,
Exhibit H, <u>Collected Notes Regarding Work Status</u>.  In August 2004, Gill
provided another handwritten note from her doctor which stated: "Please

excuse from work.  Last office visit 8/13/04.  Next office visit 9/2/04." <u>Id.</u>
Thereafter, Gill provided VanTuyle with memos periodically informing
VanTuyle that Gill's physician had not released her to return to work.  <u>Id.</u>
In August 2006, Gill's doctor provided a handwritten note to the District
that stated: "Pt. is medically unable to return to teaching duties at this
time." <u>Id.</u>  None of the notes and memoranda stated the diagnosis of Gill's
medical condition, her prognosis, or any other medical information.  Gill
provided no other documentation of the nature or extent of her illness.  Gill
states that the District never asked for such information.  <u>Plaintiff's Reply</u>,
Exhibit M, <u>Affidavit of Sharon Gill</u>, ¶ 11.

In June 2004, Gill qualified to receive Temporary Disability Payments
from the Illinois Teachers' Retirement System (TRS).  The Temporary
Disability Payments were effective from April 18, 2004.  Gill continued to
receive Temporary Disability Payments until she retired on September 23,
2006.  She never returned to work for the District.

The District paid for Gill's health insurance through September 30,
2004.  In September 2004, Defendant VanTuyle sent Gill a letter, which
stated, in part:

The district, therefore, needs to be informed in writing of your

desire to return to work on a specific date, to resign, to retire, to request leave for temporary or permanent disability or to request Family Medical Leave Act leave.  The specific nature of your request is necessary to determine how your health insurance is to be handled.  It is not the district's intention to interrupt employee insurance coverage, but the district paid insurance contribution, precisely like salary, must be earned by the employee having performed service to the district.

<u>Defendant's Motion for Summary Judgment</u>, Exhibit 4.  Gill responded with

a memo to VanTuyle dated September 14, 2007.  The memo stated, in part:

As per our telephone conversation on August 24, 2004, I will not be retiring or resigning at this time.  I feel it should be apparent that I am on temporary disability since your office completed the papers for the TRS disability.

As further stated to you, neither my doctor nor I can give you the exact date I will be returning to work.  You were informed that I have an appointment with my primary care physician on September 30, 2004 and that after this visit I would let you know the status of my returning to work.

<u>Id.</u>, Exhibit 5.

VanTuyle responded with a letter dated September 14, 2004.  The

body of the letter stated:

Dear Sharon:

Thank you for your memo of September 14, 2004.  Our view is that you are on a leave of absence without pay.

If you wish to continue insurance coverage, you must pay $495.10 by October 1, 2004 or you will be terminated from

4

coverage effective October 1, 2004.

Id., Exhibit 6.  Gill paid the insurance premiums from October 2004 until July 2005.  Gill was no longer covered by the District's insurance after that date.

On May 3, 2005, Gill received an Intake Questionnaire from the Equal Employment Opportunity Commission (EEOC) in the mail.  She had requested the form to complain about the District's decision to stop paying her health insurance premiums.  Plaintiff's Reply, Exhibit M, Affidavit of Sharon Gill, ¶ 4.  She filled out the Intake Questionnaire.  She included her name, address, Social Security Number, and the name and address of the District.  She stated on the form that she believed she was discriminated against because of her age, disability, and sex.  She described her situation as follows:

> I became ill in March, 2004.  The school district notified me that as of Oct. 1, 2004, they would no longer pay my health insurance and that I would be responsible for paying the premiums.  Previously they had paid the insurance for Paul Rister, an employee, during his entire sick leave.

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (d/e 10), Exhibit K, Intake Questionnaire.  She signed the Intake Questionnaire on May 3, 2005, and mailed it to the EEOC on

May 4, 2005.  <u>Plaintiff's Reply</u>, Exhibit M, <u>Affidavit of Sharon Gill</u>, ¶ 4.

The EEOC stamped the Intake Questionnaire as received on May 5, 2005.

On July 15, 2005, Gill received from the EEOC by mail five copies of the

typed Charge of Discrimination.  She signed the typed forms and returned

them on July 17, 2005.  <u>Id.</u>, ¶ 8.  The EEOC issued her a right-to-sue letter

on April 27, 2006.  <u>Complaint (d/e 1)</u>, Exhibit B.  She filed this action on

July 26, 2006.

During discovery, Gill submitted an interrogatory to the District which

asked for information regarding its policy regarding the payment of health

insurance premiums for teachers on unpaid leave who were receiving

Temporary Disability Payments from TRS.  The Defendants responded:

> While Defendant had no policy directly pertaining to the
> payment of teachers' health insurance premiums while they were
> on disability leave, several provisions in Board Policy, as well as
> the Professional Negotiations Agreement between the Board of
> Education of North Greene Unit District No. 3 and the North
> Greene Education Association Local #3818 IFT/AFT-AFL/CIO,
> speak to issues involving leaves of absence and the health
> insurance benefits for District employees.  Attached to this
> Response as Exhibit No. 1 are copies of Board Policies 5:180,
> 5:185, 5:250 and Articles 6.6 and 9.1 from the Professional
> Negotiations Agreement.

<u>Plaintiff's Memorandum of Law in Support of Motion for Summary</u>

<u>Judgment (d/e 9) (Plaintiff's Memorandum)</u>, Exhibit B, <u>Answers to Plaintiff's</u>

First Set of Interrogatories to Defendant North Greene Unit School District #3, Answer to Interrogatory 9(a).

The attached documents, to which the District referred in the quoted answer to the interrogatory, say little about health insurance. Policy 5:180 discusses sick leave, but does not mention health insurance benefits. Policy 5:185 discusses eligibility for leave under the Family Medical Leave Act (FMLA). 29 U.S.C. § 2601 et seq. This Policy states, in part: "During a family and medical leave, employees are entitled to continuation of health benefits that would have been provided if they were working." Id., Policy 5:185, at 2. Policy 5:250 discusses various types of leaves of absence, but does not mention health insurance benefits. Article 6.6 of the Professional Negotiations Agreement between the Board of Education of North Greene Unit District No. 3 and the North Greene Education Association Local #3818 IFT/AFT-AFL/CIO (CBA) obligates the District to provide health insurance for covered employees. The section states, in part: "Effective September 1998, and for the remaining life of this Agreement, the Board shall pay to the insurance carrier an amount equal to the single health, dental and life insurance premium for each bargaining unit member." Id., CBA, Article 6.6. The CBA discusses leaves of absence in Article 9.1. This Article

states, in part: "Leave of Absence will be granted only if the District will directly benefit." Id., Article 9.1.

Gill's interrogatories also asked the District to state why the District stopped paying her health insurance premiums. The District responded: "Defendant stopped paying Plaintiff's health insurance premiums because Plaintiff did not request Family Medical Leave Act leave." Id., Answer to Interrogatory 10(f).

Gill also asked the District about other employees who had received Temporary Disability Payments from TRS since 2001. The District identified five other teachers who received Temporary Disability Payments. None of these teachers requested FMLA leave. The District provided the following additional information about the five employees:

1.  Morris Tolley, a man born on November 3, 1940, stopped teaching on November 26, 2003. He received Temporary Disability Payments effective December 27, 2003. He resigned on June 2, 2004. The District paid his insurance premiums through August 31, 2004.

2.  Denise Wear, a woman born on August 18, 1950, stopped teaching on February 28, 2005. She received Temporary Disability Payments effective March 1, 2005. The District paid her health insurance

premiums through August 31, 2005.  The District's answer stated that Wear did not resign and was not terminated, but does not state when or if she returned to work.

3.  Cheryl Meyer, a woman born on August 23, 1948, was on sick leave through November 26, 2003.  Thereafter, she received Temporary Disability Payments effective November 27, 2003.  The District paid her health insurance premiums through the date of her death on February 20, 2004.

4.  Cathy Wimsett, a woman born April 6, 1951, was on sick leave until October 4, 2005.  She received Temporary Disability Payments effective October 13, 2005.  The District paid her health insurance premiums through December 2005.  The District's answer stated that Wimsett did not resign and was not terminated, but does not state when or if she returned to work.

5.  Paul Rister, a man born on November 17, 1954, stopped teaching on June 3, 2002.  He received Temporary Disability Payments effective September 27, 2002.  The District paid his health insurance premiums through the date of his death on May 4, 2003.

Id., Answers to Interrogatories 6 and 7.

Gill had mentioned Paul Rister by name in her EEOC Charge of Discrimination.  VanTuyle gave reasons in her Affidavit why the District paid Rister's health insurance premiums until the day of his death, but stopped paying Gill's premiums on October 1, 2004.  VanTuyle stated:

9.    Throughout the course of Gill's leave, she has never requested leave under the Family and Medical Leave Act (FMLA) – nor has she provided documentation regarding the nature or extent of her illness to the District.

10.   According to District records, Mr. Paul Rister was 49 years old at the time of his illness and death.

11.   Mr. Rister went on medical leave with a terminal illness. Mr. Rister provided the District with information concerning his medical condition and his status as an employee.  While no one could predict how long Mr. Rister would live, it was clear that his death was imminent and that the cost of continuing his health insurance benefit would be for a relatively short period of time.

. . . .

14.   Unlike Mr. Rister, Ms. Gill has given the School District no indication as to the nature or extent of her illness, when or if she may be returning to work, or to provide consistent documents from a physician.

Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (d/e 11), Exhibit 2, VanTuyle Affidavit, ¶¶ 9-11, 14.

VanTuyle was also deposed in discovery.  VanTuyle was asked several

times about the reasons why the District stopped paying Gill's health insurance premiums.  VanTuyle initially stated that Gill's "health care premiums were no longer paid by the district because she had not returned to work."   <u>Plaintiff's Memorandum</u>, Exhibit C, <u>Deposition of Vicki VanTuyle</u>, at 50-51.  She later stated:

> The why is that in consultation with the attorney and in discussing with the board we determined not to continue paying her health insurance benefits.
>
>  . . . .
>
> She -- the employee had exhausted all sick leave and was unable to return to work.
>
> . . . .
>
> She did not return to work, was not receiving a paycheck.  Did not return to work and was not receiving a paycheck.

<u>Id.</u>, at 57.

Still later in the deposition, VanTuyle was shown the Answer to Interrogatory 10(f) which stated that the District stopped paying health benefits because Gill did not ask for FMLA leave.  VanTuyle stated:

> Part of the policy that the district was following was requesting that the employee communicate with us about their return or inability to return to work, and the fact that she did not return to work was -- those two things, not requesting Family Medical Leave Act leave as requested and then also not returning to work

11

were at least two parts of why the medical insurance was not continued to be paid.

. . . .

I can't tell you at what point one took more precedence than the other, because the fact was that she had not -- was not returning to work.

Id., at 88-89.

VanTuyle was also asked why the District paid health insurance premiums for a period of time after a teacher went on disability leave, as in the case of Gill and the others identified above. VanTuyle explained that teachers work nine months, but received twelve months of health benefits, so if a teacher has worked part of a year, he or she has earned benefits for some part of the three summer months, in addition to the days actually worked. VanTuyle stated that "employees who are hired in August and begin teaching in August of a school year, even though they finish and could resign or be terminated in May of that school year, will continue to receive insurance benefits for a full year." Id., at 53. When asked how much additional health benefits are earned for each day worked, VanTuyle said each case is treated differently, "Each case, as I said, if -- I would be consulting with the attorney and the board, because each case is different as

to the number of days that that employee has worked and what a proration of benefits may be." Id., at 55.

VanTuyle also stated that Gill was considered an employee of the District even while she was on leave and receiving Temporary Disability Payments. Id., at 23-24. VanTuyle was not aware of a provision in the CBA or in a District Policy that addressed whether a teacher on leave was entitled to receive health benefits. Id., at 70-71.

## ANALYSIS

Gill alleges that the District and VanTuyle discriminated against her because of her age and gender in violation of Title VII and the ADEA. All parties seek summary judgment. To prevail, the moving party must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the moving party has met the initial burden, the non-moving party must present evidence to show that issues of fact remain with respect to an issue essential to the non-moving party's case,

and on which the non-moving party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In this case, VanTuyle is entitled to summary judgment, but otherwise, issues of fact exist.

A.    VANTUYLE

Gill brings her claims under Title VII and the ADEA.  Both of those statutes prohibit a covered employer from discriminating in employment, in this case due to age and gender.  42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b).  A claim under these statutes can only be brought against the employer.  Cianci v. Pettibone Corp., 152 F.3d 723, 729 (7th Cir. 1998); Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995).  The District was the employer, not VanTuyle.  VanTuyle is entitled to summary judgment.

B.    STATUTE OF LIMITATIONS

The District argues that Gill's claim is barred by the statute of limitations.  A party asserting a claim for employment discrimination under Title VII and the ADEA must first file a charge of discrimination with the EEOC.  In Illinois, the charge must be filed within 300 days of the date that the discrimination took place.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11 (2002).  See 42 U.S.C. §2000e(5)(e)(the time frame

is 300 days because Illinois has a state agency, the Illinois Department of Human Rights, which provides a state process to remedy employment discrimination). The alleged discriminatory act was refusing to pay Gill's health insurance premiums. The District notified Gill on September 14, 2004, that the District would stop paying those premiums. Gill's formal charge of discrimination was not filed until July 17, 2005, more than 300 days later.

For purposes of the statute of limitation, however, a charge is deemed filed when the complaining employee submits the information that constitutes the charge. <u>Early v. Bankers Life and Cas. Co.</u>, 959 F.2d 75, 80 (7th Cir. 1992); <u>Steffen v. Meridian Life Ins Co.</u>, 859 F.2d 534, 543-44 (7th Cir. 1988). In this case, the Intake Questionnaire contained the substance of the charge. Gill gave her name, address, Social Security number, her employer's name and address, and a description of the claimed discriminatory act. The Intake Questionnaire was filed no later than May 5, 2005, well within the 300 day limit. When read in the light most favorable to Gill, the filing of the Intake Questionnaire met the requirements of the 300 day filing requirement. The District is not entitled to summary judgment on the basis of the statute of limitations.

C.    <u>TITLE VII</u>

Gill is proceeding at summary judgment under the indirect method of proof.  She, therefore, must present evidence of a <u>prima</u> <u>facie</u> case that: (1) she is a member of a protected class; (2) she was meeting her employer's reasonable expectations; (3) despite this, she suffered an adverse employment action; and (4) a similarly-situated person outside of the protected class was treated more favorably.  <u>See</u> <u>Gorence v. Eagle Food Centers, Inc.</u>, 242 F.3d 759, 765 (7th Cir. 2001).  An adverse employment action is a loss of compensation or benefits, such as demotion or denial of promotion, or a material reduction in duties and responsibilities.  <u>Smart v. Ball State University</u>, 89 F.3d 437, 441 (7th Cir. 1996).  To be similarly-situated, a person must be directly comparable to Gill in all respects.  <u>Burks v. Wisconsin Dept. of Transp.</u>, 464 F.3d 744, 751 (7th Cir. 2006).  Relevant factors to show this include whether Gill and the similarly-situated employee reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience, and qualifications.  <u>Id.</u>

Once Gill has met her burden, the District must present a valid non-discriminatory reason for the decision.  Gill must then present evidence that

the stated reason is a pretext.  Gorence, 242 F.3d at 765.  A pretext is a lie.

Gill, therefore, must present evidence that the stated reason is not the true

reason for the actions; it is not sufficient to prove that there is no factual

basis for the stated reason or the stated reason was not sufficient to

motivate the action.  Gill must present evidence that the stated reason is

false.  Forrester v. Rauland-Borg Corp., 453 F.3d 416, 418-19 (7th Cir.

2006).

Usually, the question of whether an employer's non-retaliatory

explanation is a lie is an issue of fact.  Massey v. Johnson, 457 F.3d 711,

719 (7th Cir. 2006).  Summary judgment should be granted for the employer

only when "the court can say without reservation that a reasonable finder

of fact would be compelled to credit the employer's case on this point."  Id.

(quoting Venters v. City of Delphi, 123 F.3d 956, 973 (7th Cir. 1997).  If

Gill presents evidence of pretext, then the matter must be tried.  Rudin v.

Lincoln Land Community College, 420 F.3d 712, 726 (7th Cir. 2005).

In this case, Gill has presented sufficient evidence on each element of

her prima facie case to overcome summary.  She is in a protected class; she

is a woman.  She has presented evidence that she is meeting her employer's

reasonable expectations.  There is no indication that there were any

problems with her competence as a teacher before she went on leave.  The
District argues that she was not meeting the District's expectations because
she was on leave.  The CBA in Article 9.1, however, states that, "Leave of
Absence will be granted only if the District will directly benefit."  It is
undisputed that the District placed Gill on leave.  This evidence, thus,
indicates that the District directly benefitted from her leave.  As such, Gill,
arguably, was meeting the District's reasonable expectations; the fact that,
according to the CBA, the leave directly benefitted the District at least
creates an issue of fact on this element.  The cases cited by the District
involve unauthorized leave, and so, do not apply.

The evidence also creates an issue of fact concerning whether Gill
suffered an adverse employment action.  The District argues that Gill
suffered no adverse employment action because she voluntarily went on
unpaid leave.  Since she was on unpaid leave, she was not entitled to the
payment of her health insurance premiums.  Gill counters that payment of
health benefits was a term or condition of employment while on unpaid
leave.

In this case, it is unclear whether payment of health benefits while on
unpaid leave is a term or condition of employment.  If an employer, in its

discretion, elects to provide some additional benefit to one employee, such as a bonus, that benefit is not part of the terms and conditions of employment; it is a discretionary act by the employer.  See Hunt v. City of Markham, Ill., 219 F.3d 649, 654 (7th Cir. 2000); Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996).   The decision not to give such a discretionary benefit to anyone else, or not to give the benefit in the future, is not an adverse employment act because the decision was always discretionary and did not affect the terms and conditions of employment. In effect, an employer can elect to provide one employee with a benefit that is not required by the terms of the employment relationship and not become obligated to provide the same benefit for every other employee.  Hunt, 219 F.3d at 654.

The evidence submitted is ambiguous regarding whether the District's decision to pay or not pay health insurance premiums was a term or condition of employment, or a discretionary act.  The District stated in its answer to interrogatories that it had no policy on the payment of these premiums.  Yet, since 2001, the District paid some of the health insurance premiums for six employees who: (1) went on unpaid leave, (2) did not request FMLA leave, and (3) received Temporary Disability Payments.  The

fact that the District provided the benefits for everyone else who went on unpaid leave, in the absence of a clear written policy, tends to indicate that payment of some health benefits while on leave was part of the terms and conditions of employment.

The District's Policy 5:185, quoted above, stated that a person on FMLA leave will continue to receive health insurance benefits. This Policy implies that a person who does not request FMLA leave will not continue to receive health insurance benefits. Article 6.6 of the CBA , quoted above, however, states that the District will pay for health insurance for every member of the collective bargaining unit. VanTuyle stated that Gill was still an employee while on leave, and so, was still a member of the bargaining unit. If so, the CBA could be read to require the District to continue to pay the health benefits for her until she was formally terminated from her employment.

Finally, VanTuyle stated that the District treated each such employee on a case-by-case basis. The fact that the amounts paid varied and that the District treated each employee on a case-by-case basis tends to show that the decision to pay these premiums was a discretionary act that was not required as part of the conditions of employment. Given the ambiguity in

the evidence, there is an issue of fact regarding whether Gill suffered an adverse employment action when the District stopped paying her health insurance benefits.

Gill has also shown that the District treated Rister more favorably that she. The District paid Rister's premiums for eleven months after he stopped teaching. He was treated more favorably. Gill and Rister were also similarly-situated with respect to health insurance premiums. Both were teachers. Both were on unpaid leave. Both received Temporary Disability Payments. Neither of them asked for FMLA leave. VanTuyle indicated that she and the Board decided whether to pay the health insurance premiums for each of the teachers on unpaid leave. Thus, the same decision maker handled each case. Gill has proven this element of her case.

The District argues that Rister was not similarly-situated because he informed the District of the nature and extent of his illness and provided documentation. Gill states that the District never required her to provide any such documentation or information. The District does not provide any evidence that the policies or rules for employment required employees on unpaid medical leave to provide this kind of information. Thus, the fact that Rister voluntarily supplied additional information does not show that

he was subject to different standards or rules of employment.  Gill has presented sufficient evidence to show that the two were similarly situated.

The District has presented a valid, non-discriminatory reason for paying the premiums for Rister, but not for Gill.  The District states that it stopped paying Gill's health insurance premiums because: (1) she was on unpaid leave, (2) the leave appeared to be indefinite because Gill gave no indication of when she would be returning to work, (3) Gill gave the District no information concerning her diagnosis or prognosis, and (4) Gill refused to ask for FMLA leave.  <u>See</u> <u>Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (d/e 11)</u>, at 8-9.  Rister was different from Gill because he provided documentation of his condition, and the District knew he was terminally ill and so knew that the commitment to pay his premiums was not open-ended.  <u>See</u> <u>VanTuyle Affidavit</u>, ¶ 14, quoted above.

Gill has presented evidence that the District's stated reasons were a pretext.  None of the six employees, including Gill, who went on leave and received Temporary Disability Payments asked for FMLA leave, yet the District paid some or all of their health insurance premiums while on leave.  This evidence tends to show that the District did not require an employee

to be on family medical leave before it paid health insurance benefits. VanTuyle initially stated in her deposition that the District stopped paying Gill's health insurance premiums because Gill stopped working. VanTuyle did not mention Gill's failure to request FMLA leave until she was shown the District's answers to interrogatories in which failure to request FMLA leave was given as the reason for the decision. This evidence supports the inference that VanTuyle did not believe that FMLA leave played a significant part in the decision. This evidence tends to show that the reliance on the FMLA is a pretext.

In addition, the District's answer to interrogatory 10(f) stated that Gill's failure to request FMLA leave was the reason for not continuing to pay her health insurance premiums. This answer to the interrogatory did not include the other reasons now given for the decision. This inconsistency, particularly in light of the other evidence, tends to call into question whether the other reasons now given for the decision were, in truth, the actual reasons. Given this evidence, the Court cannot "say without reservation that a reasonable finder of fact would be compelled to credit the employer's case on this point." Massey, 457 F.3d at 719. Issues of fact, therefore, remain.

Gill argues that she is entitled to summary judgment because she has proven that the District's stated reasons were pretextual.  This is incorrect.  Because Gill presented evidence of pretext, she has demonstrated that issues of fact exist at the summary judgment stage; she has not demonstrated that she is entitled to judgment.  <u>Rudin</u>, 420 F.3d at 726.  Gill still has the ultimate burden to prove that the District intentionally discriminated against her because she is a woman.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507-08 (1993).  Gill, thus, is entitled to a trial on her Title VII claim.  She is not entitled to summary judgment.

D.   <u>ADEA</u>

Gill is also using the indirect method of proof to establish her ADEA claim.  The <u>prima</u> <u>facie</u> case is similar to the Title VII claim; she must present evidence that: (1) she was in a protected class, i.e., in this instance over 40 years of age; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) a similarly-situated, substantially younger person was treated more favorably.  <u>Bennington v. Caterpillar, Inc.</u>, 275 F.3d 654, 659 (7th Cir. 2001).  The District then must present its non-discriminatory reason, and Gill must present evidence that the stated reason is a pretext.  <u>Baron v. City of Highland Park</u>, 195 F.3d

333, 341 (7th Cir. 1999).  The same evidence that shows that issues of fact exist in the Title VII claim also shows that issues of fact exist in the ADEA claim.

The only elements in Gill's ADEA claim which are substantially different from her Title VII claim are: (1) whether she was over 40 years of age, rather than whether she was in a class protected by Title VII; and (2) whether a similarly-situated, substantially younger person was treated more favorably, rather than whether a similarly-situated individual outside of the protected class was treated more favorably.  It is undisputed that Gill was 61 years old when the District notified her that it would stop paying her health insurance benefits.  Gill further presented evidence that Rister was a similarly-situated, substantially younger person who was treated more favorably.  The District argues that Gill must present evidence that the District treated a person under 40 years of age more favorably because the ADEA protects individuals who are 40 years of age or older.  Rister was 49 at the time the District paid his health insurance premiums.

However, the person who was claimed to have been treated more favorably can be over 40 as long as the person was substantially younger than the plaintiff.  Hoffman v. Primedia Special Interest Publications, 217

F.3d 522, 524 (7th Cir. 2000).  In this case, Gill was 61 and Rister was 49.

A person more that ten years younger than the Plaintiff is presumed to be

a substantially younger person.  Id.  Gill has, thus, presented evidence that

a similarly-situated person who was substantially younger was treated more

favorably.  Issues of fact exist with respect to the other elements of Gill's

claim and with respect to the issue of pretext for the same reasons discussed

above concerning her Title VII claim.  Summary judgment is therefore

denied.

THEREFORE, Plaintiff's Motion for Summary Judgment (d/e 8) is

DENIED, and Defendants' Motion for Summary Judgment (d/e 7) is

ALLOWED in part.  Summary judgment is entered in favor of Defendant

Vicki VanTuyle and against Plaintiff Sharon Gill.  VanTuyle is dismissed as

a party from the case.  The Defendants' Motion for Summary Judgment is

otherwise DENIED.  Due to a conflict in the Court's schedule, the trial

scheduled for January 8, 2008, is canceled, and reset for January 23, 2008,

at 9:00 a.m.  The pretrial conference will be held as scheduled on January

7, 2008, at 11:30 a.m.

IT IS THEREFORE SO ORDERED.

ENTER:   December 5, 2007

FOR THE COURT:

                    s/  Jeanne E. Scott
                 JEANNE E. SCOTT
        UNITED STATES DISTRICT JUDGE